UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Vladimir Tomov,<br>        *Plaintiff*,<br><br>v.<br><br>Micron Technology Inc.,<br>        *Defendant.* | No. 1:24-cv-00960-MSN-LRV |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Micron Technology Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (ECF 18). For the reasons stated below, Micron's Motion (ECF 18) will be **GRANTED** and Plaintiff Vladimir Tomov's Amended Complaint (ECF 16) will be **DISMISSED** on all counts.

## I.     BACKGROUND

### A.     Factual Background

Vladimir Tomov worked as an Equipment Technician at Micron Technology's ("Micron") Manassas, Virginia facility from April 12, 2010, until January 24, 2022. ECF 16 at 2 ("Am. Compl."). On September 3, 2021, Micron announced its mandatory workforce-wide COVID-19 vaccination policy and notified employees that they had until November 15, 2021 to submit religious exemption requests. *Id.* ¶¶ 12–13. When Tomov, a member of the Bulgarian Orthodox Church,[1] heard about the vaccine policy, he researched the Church's instructions and came to the conclusion that receiving a COVID-19 vaccine would violate his religious beliefs. *Id.* ¶¶ 15–17. Specifically, he reviewed a document on the website of the Bulgarian Eastern Orthodox Diocese

---

[1] Tomov asserts that he attended services at the Dormition of the Virgin Mary Greek Orthodox Church in Winchester, Virginia because there are no Bulgarian Orthodox Churches close to him. Am. Compl. ¶ 11.

of the USA, Canada, and Australia titled "Policies [sic] Statements on Contemporary Moral Issues," which stated:

> When a question or need arises which would involve a major medical intervention in our lives, or involve us as practitioners of medical/scientific research, we need to consider the following: How does this affect our salvation? Will any part of the process require us to sin, to one degree or another? Are we tampering with the divinely established order of His Creation? Is this process dependant [sic] upon someone else committing sin? Does sin have to be committed in order for this process to even be possible? Does my having this process deprive someone or another of the possibility of receiving beneficial treatment?
>
> All of these considerations will give us a foundation upon which we can make a decision in good conscience and in a God-pleasing manner.

*Id*. ¶¶ 15–16.

Tomov also came to believe that because "the available vaccines changed or affected the genetic makeup with his body, it violated the plan God [had] when he created his body" and that "the vaccine mandate itself amounted to slave treatment, which violates the religious tenants of the Bulgarian Orthodox Church as he understood them." *Id.* ¶¶ 18–19.

On September 6, 2021, Tomov notified Micron, via email, that the vaccine violated his religious beliefs. *Id*. ¶ 20. Later, he encountered the document "Orthodox Resistance to Vaccine Mandates: Men Have Become Wolves to Men," which was written by Orthodox priests and "confirmed his convictions." *Id*. ¶ 21. In October 2021, Micron employees began to avoid Tomov because he did not have the sticker on his badge indicating he had received a COVID-19 vaccination. *Id.* ¶¶ 22–23. Despite Tomov's two requests for safety boots and / or goggles, his supervisor refused to provide them and also informed Tomov that he would soon be placed on unpaid leave because he did not receive the vaccine. *Id.* ¶¶ 24–28. Tomov alleges that he was 56 at the time of the dispute and that most Micron employees at Manassas who refused the COVID-19 vaccine were also over age of 40. *Id.* ¶¶ 29–30.

On November 2, 2021, Micron notified Tomov that he would be placed on unpaid leave beginning on November 20, 2021, if his religious accommodation request was denied or if he did not provide vaccination proof. *Id.* ¶ 31. Micron also told Tomov that he would be discharged on January 24, 2022, if he still had not met those conditions. *Id.* ¶ 32. Tomov was ultimately terminated on January 24, 2022, after he did not receive a religious accommodation and failed to provide proof of vaccination. *Id.* ¶¶ 33–34.

### B. Procedural History

Tomov timely filed an Equal Employment Opportunity Commission ("EEOC") complaint and was notified of his right to file suit on March 6, 2024. *Id.* ¶¶ 36–37. On June 4, 2024, Tomov filed suit in the Eastern District of Virginia. ECF 1. After Micron filed a Motion to Dismiss on August 12, 2024, Tomov amended his complaint. ECF 16. In his Amended Complaint, Tomov brings claims under Title VII for failure to accommodate (Count I) and retaliation (Count II), and an ADEA disparate impact claim (Count III).[2] Am. Compl. at 6–10. Micron then moved to dismiss the Amended Complaint in its entirety on September 17, 2024. ECF 18. Tomov responded on October 1, 2024, ECF 24, and Micron replied on October 7, 2025. ECF 24. Although oral argument on the current Motion was scheduled for October 25, 2024, the Court dispensed with oral argument because it would not aid the decisional process.

## II. LEGAL STANDARD

Courts may dismiss a complaint when the plaintiff has failed to state a claim for which relief may be granted. FED. R. CIV. P. 12(b)(6). Thus, to state a viable claim, a plaintiff's "factual

---

[2] The Amended Complaint lists Plaintiff's disparate impact claim as another "Count II," however, this appears to be a mistake and the Court will construe the disparate impact claim as a third, separate count. Additionally, As Micron pointed out and Tomov conceded in the briefing, Tomov's Amended Complaint asserts a Title VII disparate impact age discrimination claim, but age is not a protected characteristic under Title VII. ECF 19 at 11; ECF 23 at 8. The Court will construe the disparate impact claim as if it had been brought under the proper statute (the Age Discrimination and Employment Act, 29 U.S.C. § 621 *et seq*).

3

allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain "enough facts to state a claim to relief that is plausible on its face" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). The Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *E.l. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). But this Court need not credit conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

### III. DISCUSSION

#### A. Failure to Accommodate (Count I)

Micron attacks Tomov's failure to accommodate claim on two grounds. Micron argues that Tomov did not adequately allege that his opposition to the vaccine was rooted in religious beliefs, and that even if he did, he did not sufficiently notify Micron of those beliefs. Because the Court finds that Micron's argument as to notice is well-founded and dispositive of Tomov's failure to accommodate claim, the Court need not address Micron's second ground: the religiosity of Tomov's objection.

To make out a plausible failure-to-accommodate claim under Title VII, a plaintiff must plead, and ultimately show, that (1) he has a bona fide religious belief that conflicts with an employment requirement; (2) he informed the employer of this belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement. *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996).

Under the second prong, the plaintiff must "inform his employer of both his religious needs and his need for an accommodation. *Cary v. Anheuser-Busch, Inc.*, 116 F. 3d 472, *4 (4th Cir. 1997) (Table) (quoting *Redmond v. GAF Corp.*, 574 F. 2d 897, 910 (7th Cir. 1978)). The plaintiff

4

"must provide enough information to allow his employer to realize the potential impact his religion will have upon his job." *Cary*, 116 F. 3d at *3 (citing *Chrysler v. Mann*, 561 F. 2d 1282, 1985 (8th Cir. 1977)).

Micron argues that Tomov has not discharged this duty. While Tomov pleaded that he notified Micron via email on September 6 that "receiving the vaccine violated his religious beliefs," Am. Compl. ¶ 20, Micron notes that the email, sent from Tomov to Micron's employee relations inbox with subject "accommodations based on religion," was actually sent on September 9 and in its entirety, stated the following:[3]

> Hi there,
>
> Because of my religion I will not take the vaccines and I need to know where is the Exception to file for this?
>
> Best Regards
>
> Vladimir Tomov.

ECF 19-4; ECF 19 at 4.

Micron argues that this is "patently insufficient" because Tomov "did not even identify his religion, let alone explain to Micron how any aspect of it conflicted with the vaccination requirement. ECF 19 at 10. In response, Tomov insists that he need not say anything more because "[t]here is no guesswork here about what Mr. Tomov is asking Micron to do." ECF 23 at 6.

Construing the amended complaint and all of its allegations most favorably to Tomov, the above email constitutes the only communication to Micron of his religious objection. But Tomov's

---

[3] It is appropriate for this Court to consider the referenced September 9 email on this procedural posture because it is "integral to the complaint" and Tomov does not dispute that it is authentic. *Goines v. Valley Community Servs. Bd.*, 822 F. 3d 159, 164–65 (4th Cir. 2016). Moreover, to the extent that there is any conflict between the Amended Complaint and the email (i.e., regarding the date that it was sent), the general rules is that "the exhibit prevails" and in any case, Tomov does not contest the content of the email in any way. *Id*. However, the Court will not consider Micron's reply email (which is attached to Micron's provided exhibit). *See* ECF 19-4.

bald assertion of "my religion" as the reason for why he could not vaccinate does not adequately establish notice to Micron of his "religious needs" and "need for an accommodation." *Cary*, 116 F. 3d at *3. In *Blackwell v. Lehigh Valley Health Network*, the plaintiff's allegation that she objected to her employer's COVID nasal swab testing requirement by stating that "observance of her religious beliefs forbids her from being subject to invasive COVID-19 testing via nasal swab" did not sufficiently plead notice. Rather, when taken with her other factual and scientific objections, it instead amounted to an assertion of a non-cognizable "blanket privilege." 2023 WL 5807840, at *8 (E.D. Pa. Sept. 7, 2023) (citing *Africa v. Pennsylvania*, 662 F. 2d 1025, 1031 (3d Cir. 1981)). Blackwell's later explanation that her church "identified [the] nasal swabs and other invasive covid measures . . . as a probable mark of the beast," could not remedy this inadequacy because she never informed her employer of such a belief and so they could not "form the basis of her [] claim." *Id*. at *9.

      Here too, Tomov has stated nothing about his beliefs apart from blanketly asserting "because of my religion." Whatever other facts regarding the Bulgarian Orthodox Church and its teachings that he now raises are simply irrelevant because none of it was ever revealed to Micron at any time. While it was obvious to Micron that Tomov did not want to comply with the vaccination policy, his failure to provide even the most basic detail to Micron means there is not "enough information about [his] religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Heller v. EBB Auto Co.*, 8 F. 3d 1433, 1439 (9th Cir. 1993) (emphasis added) (informing employer of need to take time off for Catholic-Jewish religious conversion ceremony constituted sufficient notice); *see also Redmond*, 574 F. 2d at 902 (informing employer of inability to work on Saturdays because of Bible classes constituted sufficient notice). Accepting Tomov's one-sentence, no-

context statement to Micron as sufficient would indeed "charge [Micron] with the responsibility for continually searching for each potential religious conflict" with respect to every possible religion and every possible religious belief, which "accommodation is not so onerous as to" do. *Redmond*, 574 F. 2d at 902; *see also Fernandez v. Central States Pension Fund*, 2024 WL 4213242, at *4 (N.D. Ill. Sept. 17, 2024) (citing *Reed v. Great Lakes Cos.*, 330 F. 3d 931, 934 (7th Cir. 2003)) (informing employer of Shamanism-based objections did not establish notice of the "myriad traditions that inform her general religious outlook," including Santeria, Yoruba, Catholicism, and veganism, because "[i]t is difficult to see how an employer can be charged with discrimination on the basis of an employee's religion when he doesn't know the employee's religion"). Moreover, doing so would frustrate the principle of "bilateral cooperation in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Cary*, 116 F. 3d at 3* (cleaned up) (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986)).

For these reasons, Tomov's failure-to-accommodate claim will be dismissed.

### B. Retaliation (Count II)

Tomov also asserts a Title VII retaliation claim, alleging that he engaged in protected activity by requesting a religious accommodation, upon which Micron, because of Tomov's request, took adverse action against him by refusing him safety goggles and boots and ultimately firing him.

To establish a prima facie Title VII retaliation violation, Tomov must show "(i) that [he] engaged in protected activity, (ii) that [his employer] took adverse action against [him], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Guessous v. Fairview Property Investments, LLC*, 828 F. 3d 208, 217 (4th Cir. 2016). In

pertinent part, Title VII forbids retaliation against an employee who has engaged in the protected activity of "opposing any practice made an unlawful employment practice," or by "making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (cleaned up).

Micron argues that Tomov cannot state a retaliation claim because simply requesting a religious accommodation does not constitute "protected activity" under the retaliation provisions of Title VII. ECF 19 at 11 (collecting cases). In response, Tomov argues that Micron's position would mean that "an employer could adopt a policy of firing anyone who requested a religious accommodation, and Title VII's anti-retaliation provisions would have nothing to say about it. This cannot be what Title VII means." ECF 23 at 7. Tomov asserts that requesting a religious accommodation definitionally "opposes a work requirement that conflicts with a religious belief" because "the employee is opposing the unlawful denial of religious accommodation by requesting that the employer refrain from it." *Id*.

The weight of authority clearly favors Micron's position. Making a religious accommodation request is not a protected activity. *Jenkins v. Valley Health System*, 2024 WL 3236418, at *6 (W.D. Va. June 28, 2024). This is because by the plain language of Title VII, the making of such a request neither "opposes any [unlawful] practice" of an employer, nor does it constitute "participation in an investigation, proceeding, or hearing" regarding an employer's Title VII violation. *Id*. (citing *Perlman v. Mayor & City Council of Baltimore*, 2016 WL 640772, at *6 (D. Md. Feb 18, 2016)). Tomov's stated suggestions otherwise are unavailing. An employer's work requirements are obviously not per se unlawful. And, a policy of firing anyone who requests a religious accommodation would obviously constitute religious discrimination under Title VII.

8

*See* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's religion").

Accordingly, Tomov's retaliation claim will be dismissed.

### C. Disparate Impact (Count III)

Tomov finally claims age discrimination under a disparate impact theory as "[he] and others over 40 refused the vaccine at a rate that was higher than those who were under 40" and "[t]he vaccine mandate had a disparate impact on those over 40 at the Manassas facility." Am. Compl. ¶¶ 54–57.

The Age Discrimination in Employment Act ("ADEA") prohibits age discrimination in employment decisions against persons who are 40 years or older. 29 U.S.C. §§ 623(a), 631(a). ADEA claims can be pursued under a disparate impact theory of liability, which does not require proof of discriminatory intent but rather challenges "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 239–40 (2005) (cleaned up). "[T]he necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 987 (1988). In pleading such an ADEA claim, "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Smith*, 544 U.S. at 241 (cleaned up) (emphasis in original). Moreover, on a motion to dismiss, allegations of disparate impact are still subject to the usual *Twombly*/*Iqbal* prohibition against conclusory pleadings. *See, e.g.*, *Stouffer v. Union R.R. Co.*,

9

*LLC*, 85 F. 4th 139, 146 (3d Cir. 2023) (unsupported allegation of "statistically significant impact" on older workers was "conclusory and properly discounted"); *Adams v. City of Indianapolis*, 742 F. 3d 720, 733 (7th Cir. 2014) (in Title VII context, assertions of disparate impact in "wholly conclusory terms," such as "disproportionate" and "impermissible impact" insufficient to survive motion to dismiss); *Wilson v. City of Chesapeake*, 2015 WL 11116781, at *2 (E.D. Va. April 3, 2015) (same as to both Title VII and ADEA claims).

Micron asserts that Tomov has failed to identify the specific employer policy in question and also pleads nothing but conclusory allegations. ECF 19 at 12. Micron also contends that Tomov, having asserted that the vaccination requirement was applied "workforce-wide" (Am. Compl. ¶ 12), fails to allege any facts that the policy had a disparate impact on older employees across the entire Micron workforce, rather than just at the Manassas facility. ECF 19 at 13 (citing *Betsey v. Turtle Creek Assocs.*, 736 F. 2d 984, 987 (4th Cir. 1984)).[4] In response, Tomov insists he has identified the specific responsible employment practice (the COVID-19 vaccination requirement) and that he did not intend to limit his allegation of disparate impact to the Manassas facility. ECF 23 at 8.

Tomov's age discrimination claim must fail. Tomov has identified the "vaccine mandate" as the specific underlying policy giving rise to disparate impact. But his allegation that "the vaccine mandate had a disparate impact on those over 40 at the Manassas facility" (Am. Compl. ¶ 57) is precisely the sort of conclusory statement that cannot survive a motion to dismiss. This statement

---

[4] *See Betsey*, 736 F. 2d at 987 ("The correct inquiry is whether the policy in question had a disproportionate impact on the [protected group] in the total group to which the policy was applied."). Micron's assertion is generally correct, as absent non-uniform application of the policy, i.e. across the country, to hold otherwise would potentially allow "gerrymander[ing] [of] the statistics," or at least an inaccurate view of the policy's effect. *See Regner v. City of Chicago*, 789 F. 2d 534, 538 (7th Cir. 1986); *Waldon v. Cincinnati Public Schools*, 89 F. Supp. 3d 944, 949 (S.D. Ohio 2015) (defining relevant population for state-mandated education personnel policy as all public school employees in Ohio where "there is no evidence that the [allegedly discriminatory policy] was handled any differently in Cincinnati than it was statewide").

derives little support from the assertion that "the majority of Micron employees at the Manassas facility who refused the COVID-19 vaccination were over the age of 40" because, as Tomov admits, Micron employees could request exemptions from the policy. *Id.* ¶ 13. Tomov's other allegations, which have nothing to do with age or even how the vaccine mandate personally affected other employees, do not provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hanover Cnty. Unit of the NAACP v. Hanover County*, 461 F. Supp. 3d 280, 298 (E.D. Va. 2020) (quoting *Rockville Cars, LLC v. City of Rockville*, 891 F. 3d 141, 145 (4th Cir. 2018)). Even if Tomov's disparate impact claim was so liberally construed as to be applicable to Micron's entire workforce, the defect remains: Tomov simply does not plead any facts that support the conclusion that Micron's vaccination policy had a disparate impact on older employees across the entire company.

Thus, Tomov's disparate impact claim will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant Micron's Motion to Dismiss (ECF 18) is **GRANTED**; it is further

**ORDERED** that Plaintiff Vladimir Tomov's Amended Complaint (ECF 16) is **DISMISSED** with prejudice[5] in its entirety.

The Clerk is directed to close this civil action.

---

[5] Tomov has already had one opportunity to amend his complaint in response to Micron's arguments. *See* ECF 14. Tomov's amended complaint does not materially differ from his original complaint with respect to the forementioned deficiencies. *See* ECF 19-2. This Court will accordingly dismiss these claims with prejudice and without further leave to amend.

11

**SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

November 15, 2024
Alexandria, Virginia